UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

CHERYL A. CRESS, )
)
      PLAINTIFF, )
)
vs. ) CASE NO. 12-CV-86-FHM
)
CAROLYN W. COLVIN, Acting )
Commissioner of the Social Security )
Administration,[1] )
)
      DEFENDANT. )

## OPINION AND ORDER

Plaintiff, Cheryl A. Cress, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[2] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the

---

[1] Effective February 14, 2013, pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff Cheryl A. Cress' application was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) Charles Headrick was held July 8, 2010. By decision dated August 17, 2010, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on December 22, 2011. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

For the reasons discussed below, the Court AFFIRMS the decision of the Commissioner.

## **Background**

Plaintiff was 49 years old on the alleged date of onset of disability and 52 years old on the date of the denial decision. She has a 12th grade education and has no past relevant work. [R. 20, 36]. Plaintiff claims to have been unable to work since February 4, 2009 as a result of diabetes, heart problems, thyroid disease, high blood pressure, and panic attacks. [R. 133].

**The ALJ's Decision**

The ALJ determined that the Plaintiff has severe impairments relating to diabetes, hypertension, depression, anxiety, panic disorder, somatoform disorder, personality disorder, post-traumatic stress disorder, obesity, left breast mass, and impairment of the heart, liver, thyroid, abdomen, legs, hands, and vision. [R. 13]. The ALJ found that the Plaintiff has the residual functional capacity to perform light work as defined by 20 C.F.R 416.967(b).[3] Plaintiff can lift or carry 20 pounds occasionally and 10 pounds frequently, and she can stand or walk for 6 hours out of an 8-hour day and sit for 6 hours out of an 8-hour day each with normal breaks. Plaintiff can occasionally bend, stoop, squat, climb, and reach overhead. Plaintiff has a slight limitation in operating foot controls, finger, feel, and grip. She should avoid fine vision, rough uneven surfaces, unprotected heights, and dangerous and fast machinery. Plaintiff must have easy access to restrooms and work must be simple, repetitive, and routine due to depression, anxiety, somatoform disorder, personality disorder, and post-traumatic stress disorder (PTSD). Plaintiff must also have limited contact with the public. [R. 15].

The ALJ determined, based on the testimony of a vocational expert, that there are a significant number of jobs in the national economy that Plaintiff could perform with these

---

[3] Pursuant to CFR § 404.1567, light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

limitations. [R. 21]. Accordingly, the ALJ determined that the Plaintiff was not disabled. The case was thus decided at step five of the five-step evaluative sequence for determining a claimant is disabled. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## **Plaintiff's Allegations**

Plaintiff asserts that the ALJ: 1) failed to properly consider the medical source opinions; 2) failed to propound a proper hypothetical to the vocational expert; and 3) failed to perform a proper credibility determination.

## **Analysis**

### Medical Source Opinions

Where there is evidence of a mental impairment that allegedly prevents a claimant from working, the regulations require the ALJ to follow the procedure for evaluating mental impairments set forth in the regulations. The ALJ is required to document the application of the procedure, known as the psychiatric review technique (PRT), in the decision. 20 C.F.R. §§ 404.1520a(3), 416.920a(e), *Carpenter v. Astrue,* 537 F.3d 1264, 1268 (10th Cir. 2008)(discussing application of the psychiatric review technique by the ALJ), *Cruse v. United States Dep't of Health & Human Servs.,* 49 F.3d 614, 517 (10th Cir. 1995)(same). The PRT requires the ALJ to consider the effect of the mental impairment on four broad areas of functioning known as the "paragraph B" criteria: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation of extended duration. *See* 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(C). These "paragraph B" limitations are not an RFC assessment, rather they rate the severity of

mental impairments at steps 2 and 3 of the evaluative sequence. *SSR* 96-8p, 1996 WL 374184 at *4. That is, the "paragraph B" criteria help the ALJ determine at step 2 whether the claimant has severe mental limitations that require further consideration in the evaluative sequence and at step 3 whether the claimant's mental limitations meet some of the criteria of the Listings of Impairments for mental disorders.[4]

In this case, the ALJ performed the PRT and supported his findings on the "paragraph B" criteria by references to the evidence in the record. [R. 13-14]. The ALJ concluded that Plaintiff's mental impairments were severe at step 2, but were not of listing level severity. *Id.*

Plaintiff asserts that the ALJ erred because he did not explain why his PRT findings varied from those of the State Disability Department Service (DDS) reviewing experts. The court finds no error. The DDS expert found that Plaintiff had greater restrictions in the areas of activities of daily living, social functioning and concentration, persistence and pace than the ALJ did. However, since the DDS expert did not find that Plaintiff was disabled because she met a Listing, the difference in the degree of severity in the findings of "paragraph B" between the ALJ and the DDS expert is not material because in no event do the "paragraph B" findings establish that Plaintiff is disabled.

Dr. Shadid, the DDS reviewing psychologist made "paragraph B" findings, [R. 283], and completed a Mental Residual Functional Capacity Assessment. [R. 279-282]. The ALJ stated he gave great weight to the RFC assessment made by Dr. Shadid. [R. 17]. The ALJ included Dr. Shadid's RFC limitations in the decisional RFC by limiting Plaintiff to simple,

---

[4] The Listings describe, for each of the major body systems, medical findings which are considered severe enough that they represent impairments which presumptively prevent a person from performing any gainful activity. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

repetitive, and routine work with only limited contact with the public. [R. 15]. Plaintiff asserts that there is an inherent conflict between Dr. Shadid's "paragraph B" finding that Plaintiff has "moderate" difficulties in maintaining concentration, persistence, or pace, [R. 293], and his RFC findings. The court finds no such conflict. As previously mentioned, the "paragraph B" findings are not RFC findings. Dr. Shadid expressed on the RFC form that Plaintiff's difficulties with concentration, persistence or pace affected her work-related activities by a marked limitation in the ability to carry out detailed instructions. [R. 279]. The ALJ accounted for that limitation in the RFC.

Plaintiff argues that Dr. Shadid's opinion is not supported by substantial evidence because it is not accompanied by a thorough exposition of the evidence. The narrative comments on Dr. Shadid's report are not extensive, but reflect that he reviewed the record. [R. 295]. Plaintiff suggests that the case should be reversed because the ALJ's list of severe impairments at step two was longer than the DDS reviewer's list. [Dkt. 18, p. 3]. There is not merit to this contention.

Plaintiff asserts that the ALJ failed in not adequately considering the Global Assessment of Function (GAF) score of 50 issued by mental consultative examiner, Dr. Dennis Rawlings, Ph.D. According to Plaintiff, that score indicates an inability to hold a job and the ALJ "must supply 'good reasons' for rejecting consideration of the GAF scores." [Dkt. 18, p. 4]. The court finds no error in the ALJ's treatment of GAF scores.

The GAF is a subjective rating on a one hundred point scale, divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning. *See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders,* 32, 34 (Text Revision 4th ed.

6

2000)("DSM-IV-TR").  A GAF score in the range of 41-50 indicates: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  *Id.* at 34.  The DSM-IV-TR instructs that the GAF scale has two components: the first part covering symptom severity, and the second part covers functioning.  If either the symptom severity or the level of functioning falls within the range, a GAF within that range should be assigned.  And, where the symptom severity and level of functioning are discordant, the GAF rating should reflect the worse of the two.  *Id.* at 32-33.  It is clear from this definition that the GAF score standing alone is not necessarily an indicator of the ability to work.  Furthermore, the Tenth Circuit has explained it is not necessary for the ALJ to specifically mention or adopt every GAF score in his decision.  See *Luttrell v. Astrue,* 453 Fed.Appx 786, 791-92 (10th Cir. 2011), *Butler v. Astrue,* 412 Fed.Appx 144, 147 (10th Cir. 2011), *Holcomb v. Astrue,* 389 Fed.Appx. 757, 759 (10th Cir. 2010)(GAF scores taken alone do not establish an impairment serious enough to preclude an ability to work and when the scores are the opinion of providers who are not acceptable medical sources, they cannot by themselves establish a medically determinable impairment, constitute a medical opinion, or be considered the opinions of a treating source).

Although the ALJ was not required to do so, he noted the GAF score of 50 in his decision. [R. 17].  See *Howard v. Comm'r of Soc.Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."). The ALJ also discussed Dr. Rawlings' other findings: Plaintiff's level of intelligence is above average, she scored a 30/30 on the mini mental status examination, her word recognition level is at the college level, and her mental status

exam suggests that she is "very intact." [R. 17]. It is clear the ALJ properly considered the GAF score along with the rest of the medical evidence.

Plaintiff next asserts that the vocational expert is incompetent and her testimony cannot be trusted because she stated she "did not feel competent to discuss the effect of a GAF of 50 on an individual's ability to work." [R. 74-75]. The transcript reveals the following line of questioning between Plaintiff's counsel and the vocational expert:

> Atty.   And the, finally, are you familiar with the concept of global assessment of functioning?
>
> VE.   Yes.
>
> Atty.   And if an individual were such GAF score of 50, would – how would that impact their ability to work?
>
> VE.   I really prefer that, that type of question be put into vocational factors, just because I don't have the GAF in front of me, and I don't like to interpret it that way.
>
> Atty:   Well, I believe it – it – it means that the person has severe symptoms. Does that – does that help?
>
> . . .
>
> VE.   Based on –
>
> ALJ:   I think she's answered the question, Mr. Gershner. She said she didn't want to testify to it, because she wasn't familiar with it.
>
> Atty:    Well, she said she was familiar with it, but she didn't have it in front of her, I thought.
>
> VE:   I am familiar with a GAF. I just prefer not to answer those questions, because it's too general, and I would prefer specific vocational factors.
>
> Atty.   But you do place people, and you are familiar with that concept?

>   VE.   I do place people, yes, I am –
>
>   Atty.   And that's part of –
>
>   VE.   – familiar.
>
>   Atty.   – sometimes what you have to read when you're – when you're placing somebody?
>
>   VE.   I, actually, don't usually use the GAF in placement, no. I prefer that people give me specific symptoms, because the GAF can be assessed on a number of factors. It could be the person spends all their time shoplifting, but that wouldn't necessarily impact a person's ability to work. So, specific symptoms, generally, better for answering those kind of questions in my opinion.

[R. 74-75].   The court finds that the vocational expert gave an acceptable answer to the question posed and further, that the answer does not demonstrate her answers are untrustworthy. As previously explained, the GAF score is a rating used by mental health professionals. The GAF score does not purport to express work-related limitations. Rather, the GAF is a single score which assesses a person's psychological, social, or occupational functioning. Without more information than the raw GAF score one cannot know what aspect of functioning contributed to the score. The vocational expert cannot be criticized for preferring to testify based on vocational factors within her area of expertise.

Plaintiff also asserts that she cannot perform the job of a bakery racker because it requires constant handling of objects, [R. 21, 69], which she states would exceed the ALJ's finding of a slight limitation in fingering, feeling, and gripping. [R. 15]. The job of bakery racker is described in the *Dictionary of Occupational Titles* (DOT) as follows:

—

> Loads wire racks with cookies, crackers, and wafers preparatory to their being dipped in icing: Removes wire rack from overhead trolley conveyor and places products on rack. Lifts and hooks rack to conveyor. May impale products on pins of wire rack and be designated Sticker (bakery products).

*Dictionary of Occupational Titles* (4th ed., 1991)(DOT), 524.687-018, 1991 WL 674400, (G.P.O.). The DOT indicates that a bakery racker requires, among other things, a low degree of motor coordination; a low degree of finger dexterity; and middle manual dexterity. Fingering and feeling are activities or conditions that do not exist with this job. *Id.* The ALJ specifically addressed Plaintiff's hand limitations in the hypothetical question posed to the vocational expert:

> Q.   . . . A slight limitation in finger, feel and grip. I'm not saying she can't use her hands to work with, but she shouldn't be doing extensive amounts of small tedious tasks with the hands like, pinning, clip fastening, working with real small nuts and bolts. She could put her child's bicycle together, but she may have trouble playing with her child's erector set."

[R. 70]. The court finds that there is no inconsistency between the DOT and the RFC. Further, the detailed job description is also consistent with the RFC.

## Hypothetical Question

Plaintiff argues that the ALJ failed to propound a proper hypothetical to the vocational expert as he did not include limitations pertaining to coworkers and supervisors, and ignored personality disorder. [Dkt. 18, p. 5; Dkt. 22,p. 2-3]. The court does not agree.

The RFC and hypothetical questions need only contain the limitations accepted as true by the ALJ. *See Talley v. Sullivan,* 908 F.2d 585, 588 (10th Cir. 1990). Hypothetical questions should be crafted carefully to reflect a claimant's RFC, as "[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments

cannot constitute substantial evidence to support the [Commissioner's] decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir.1991) (quotation omitted); see also *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir.1995) (noting "the established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record"). Additionally, the existence of a mental disorder does not necessarily mean that a claimant is disabled, absent evidence that the disorder affects her ability to work. See *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir.1988) (claimant suffering from major depression not automatically disabled where depression does not significantly limit ability to work).

Dr. Shadid found marked limitations in Plaintiff's ability to understand, remember, and carry out detailed instructions, as well as her ability to carry out detailed instructions, and ability to interact appropriately with the general public. He determined Plaintiff was not significantly limited in her ability to accept instructions and respond to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting extreme behavior. [R. 279-280]. Based on these restrictions, the ALJ posed the following hypothetical question: "We will not (sic) the depression, anxiety, somatoform disorder, personality disorder, and the post-traumatic stress. Again, we will keep the work simple, repetitive and routine. And, again, I will have limited contact with the public . . . " [R. 71]. The court finds that the ALJ's hypothetical question accurately reflected Dr. Shadid's opinion about Plaintiff's ability to perform work-related activities and is therefore supported by substantial evidence.

### Credibility Determination

Plaintiff argues that the ALJ failed to delineate what specific statements he accepts as true; used "meaningless boilerplate;" failed to consider credibility in the course of assessing RFC; failed to recontact doctors about the veracity of their own records; failed to demonstrate Plaintiff could perform ADL's on a daily basis; faulted Plaintiff for not receiving mental health therapy despite testimony that she could not afford treatment; ignored people with somatoform disorder are not good candidates for mental health therapy; improperly speculated about Plaintiff's work record; engaged in improper picking and choosing of evidence supporting his decision; and ignored that no doctor ever recorded that Plaintiff's complaints were exaggerated. [Dkt. 18, p. 6-12].

Credibility determinations are peculiarly the province of the finder of fact, and the court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995). The ALJ must "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible." *Id.* The ALJ cited numerous grounds tied to the evidence for the credibility finding:

> Plaintiff's "[d]aily activities are not consistent with her statements concerning the intensity, persistence, and limiting effects of her impairments. In her testimony the claimant alleges that she can only stand for 10 minutes, sit for 30 minutes, walk one block and lift 10 pounds. The evidence demonstrates that the claimant cares for 3 special needs children, she home schools all three of them, takes care of her personal care, prepares some meals, pays bills, goes shopping for groceries and personal items in stores, watches television and movies, drives, goes to the library, cross-stitches, and works puzzles. Dr. Garmany opined that the claimant has

> 'excellent' functional capacity and can demonstrate 4 metabolic equivalent of task (METs) or more of activity. Exhibit 20F page 18.

[R. 18]. The ALJ also noted that Plaintiff's mental health treatment is not consistent with her allegations concerning the intensity, persistence, and limiting effects of her impairment. Plaintiff testified that she could not afford counseling, yet the ALJ found this unusual because Plaintiff saw specialists concerning her physical impairments. [R. 18]. The court finds that the ALJ adequately explained the basis for his credibility determination and that the credibility determination is supported by substantial evidence.

The court rejects Plaintiff's assertion that the ALJ's credibility determination rests on inappropriate boilerplate language. The ALJ discussed the evidence he considered in assessing Plaintiff's credibility. *Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1170 (10th Cir. 2012)(using boilerplate language is not problematic if the ALJ refers to specific evidence to support conclusions.).

Plaintiff asserts that the ALJ did not consider claimant's credibility in the course of assessing her RFC. [Dkt. 18, p. 7]. Because "the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC," which is used at steps four and five, "the ALJ's credibility and RFC determinations are inherently intertwined." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009); *see also* Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *2 (July 2, 1996) ("The . . . [claimant's] RFC is used at step 4 of the sequential evaluation process to determine whether an individual is able to do past relevant work, and at step 5 to determine whether an individual is able to do other work, considering . . . her age, education, and work experience."). The court finds no error in the ALJ's credibility assessment.

As part of the credibility determination, the ALJ noted the record indicates that Plaintiff walks a mile every day. The ALJ found this information inconsistent with Plaintiff's testimony. [R. 19]. Plaintiff asserts that she has no memory of relaying this information to healthcare providers and that it more likely represents a statement made one time and then "cut and pasted onto successive visits to the clinic." [Dkt 18, p. 8]. Plaintiff argues that "the ALJ should have recontacted the doctors about the veracity of their own records." [Dkt. 18, p. 8-9]. According to Plaintiff, the failure to do so violates 20 C.F.R. § 416.920b which states that "evidence is insufficient when it does not contain all the information needed." [Dkt. 18, p. 9]

The record was not insufficient. It contained all of the information needed to render a decision. The ALJ had hundreds of pages of records from Plaintiff's treating physicians, hospitals, examining and non-examining consultative experts. The records included objective evidence on which the ALJ relied: June 2009 x-ray of Plaintiff's right knee showing minimal joint narrowing with small osteophyte off inferior medial femur; November 2006 mental status exam suggests she is "very intact;" December 2009 chart note indicating Plaintiff has excellent functional capacity and demonstrated 4 metabolic equivalent of task (METs) or more of activity. "Further, when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. [T]he burden ordinarily is on counsel to present issues in need of further exploration." See *Hawkins. v. Chater*, 113 F.3d 1162, 1167 (10th Cir.1997). At the hearing counsel did not suggest further development of the record was necessary.

Overall, Plaintiff essentially disagrees with the weight the ALJ gave to the relevant credibility factors. However, the Court may not reweigh the evidence on appeal. Since the ALJ properly linked his credibility finding to the record, the undersigned finds no reason to deviate from the general rule to accord deference to the ALJ's credibility determination.

### Conclusion

The Court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts.  The court further finds there is substantial evidence in the record to support the ALJ's decision.  Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 21st day of May, 2013.

*Frank H. McCarthy*

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE